UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARKEL JOHNSON,
   Plaintiff,

  v.              Case No. 10-CV-337

HOLLY MEIER, RICK RAEMISCH,
JODINE DEPPISCH, JIM SCHWOCHERT,
MARK SCHOMISCH, RENEE SHULER,
DR. DAVID BURNETT, and JOHN DOE,
   Defendants.

---

### DECISION AND ORDER

  Plaintiff, Markel Johnson, a Wisconsin state prisoner, filed this case pursuant to 42 U.S.C. § 1983. He claims that defendants acted with deliberate indifference when they denied his request for knee surgery after he injured his knee at Fox Lake Correctional Institution, in violation of the Eighth Amendment to the United States Constitution. Before me now is defendants' motion for summary judgment.

### I. SUMMARY JUDGMENT STANDARD

  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. FACTUAL BACKGROUND

Plaintiff was incarcerated at Fox Lake Correctional Institution ("FLCI") at all times relevant to this lawsuit. Defendant Holly Meier is a supervisor in the Health Services Unit ("HSU") at FLCI. Defendants Rick Raemisch, Jodine Deppisch, Jim Schwochert, Mark Schomisch and Renee Schueler are all FLCI agents who were acting under the color of state law. Defendant David Burnett is the medical director for the Wisconsin Department of Corrections Bureau of Health Services.

On February 28, 2008, plaintiff injured his knee while playing basketball at FLCI. He presented to the HSU with an injury to his left knee along with moderate pain, and was referred to Waupun Memorial Hospital's emergency department. X-rays taken there were negative for any fractures, dislocations or excess fluids. Plaintiff was provided with a knee immobilizer and prescribed Tylenol #3 for pain.

2

At a follow-up HSU appointment on March 3, 2008, plaintiff reported decreased pain and increased function. He declined the further use of Tylenol #3. On March 12, 2008, plaintiff had another follow-up appointment where he indicated that he was no longer using his knee immobilizer. His physician noted that his left knee exhibited a full range of motion and recommended a treatment plan consisting of continued conservative self-care measures and activity precautions. Plaintiff was seen again on April 16, 2008, and his physician described his left knee as "completely unremarkable." On June 5, 2008, plaintiff had another HSU appointment. His physician noted that plaintiff was not doing the rehab exercises he was told to do—specifically, a "straight leg raise" home exercise program that would strengthen his quad muscles. Plaintiff's physician recommended that he not engage in jumping or force exertion activities and instead focus on straight leg raise exercises.

Plaintiff re-injured his knee playing basketball on June 10, 2008, and was taken to the HSU. He was issued crutches, and instructed to rest and not play basketball. Plaintiff was seen again at the HSU on July 2, 2008. At that appointment, he reported that his knee was not feeling any better and that it hurt when he did squats while working out. Plaintiff was told that he needed to use low weights and increase slowly. On July 7, 2008, plaintiff was given a steroid injection in his left knee.

On July 19, 2008, plaintiff re-injured his knee and was seen by a registered nurse. He was prescribed rest, ice, and ibuprofen for pain. At a follow-up HSU appointment on August 14, 2008, plaintiff reported continued knee pain. His physician noted that he continued to not do his straight leg raise exercises. At plaintiff's request, his physician agreed to the second steroid injection on the condition that he start doing his straight leg

3

raises and refrain from playing basketball. Plaintiff was given the second steroid injection on September 5, 2008.

On September 11, 2008, plaintiff reported to medical staff that his left knee gave out and that the injury was not related to any activity but had "just happened." He was prescribed ice, elevation, crutches, and ibuprofen.

Plaintiff was seen at the HSU on October 6, 2008, where his physician noted a likely grade II or III ACL tear, and sought authorization for an MRI to confirm. On October 19, 2008, plaintiff reported to a registered nurse that his knee gave out. The note indicates that, while plaintiff had crutches, he was not using them and instead trying to walk without them.

Plaintiff's left knee was examined via MRI on November 5, 2008, which confirmed an ACL tear, along with medial and lateral meniscus tears. On November 19, 2008, plaintiff's physician reviewed the MRI results with him and agreed to present the MRI results to Corrections' "Prior Authorization for Therapeutic Level of Care" Committee ("the Committee"). The physician requested an orthopedic surgery consult The Committee is a panel of doctors and other medical professionals that considers whether surgical treatment should be authorized. The Committee authorized six sessions of physical therapy and a hinged knee brace rather than ACL reconstruction surgery.

From December 15, 2008 to January 12, 2009, plaintiff participated in physical therapy. By the conclusion of the physical therapy regimen, he had regained his full range of motion and had increased strength in his left knee. On January 2, 2009, plaintiff was issued a knee brace and instructed in its use, and on January 28, 2009, he was seen in the HSU for a follow-up appointment. He was not wearing his knee brace during that

4

Case 2:10-cv-00337-LA   Filed 01/22/13   Page 4 of 9   Document 59

appointment. Plaintiff's physician, who noted that his left knee was "rehabbing" well, recommended that plaintiff use his brace, and reminded him that he should continue his muscle strength exercises while avoiding extra activities and recreation.

On July 30, 2009, plaintiff was seen in the HSU for further follow-up and his physician noted his pain and instability were diminished when he used the brace. It was further noted that plaintiff's ability to transfer and ambulate were good when he was wearing the brace. At plaintiff's insistence, his physician agreed to present his progress at a future Committee meeting in order to see whether an orthopedic surgery consultation would be approved. Plaintiff's physician described his condition as non-urgent. The Committee, which considered plaintiff's request on August 12, 2009, noted that his pain was diminished when he used his brace, and that special conditions were in place for plaintiff, notably, sleeping on a low bunk. The Committee approved continuing conservative care, with an instruction to re-present if conditions warranted.

On April 8, 2010, plaintiff reported left knee pain and was seen at the HSU. His physician noted that he was not wearing his knee brace compliantly, and reminded him to do so.

An ACL injury may be treated a number of different ways. Some individuals with ACL injuries require only minimal medical intervention. More commonly, doctors recommend "conservative" treatment which consists of rehabilitation through physical therapy. Physical therapy is intended to strengthen the surrounding muscles to compensate for the torn ligament. In circumstances where rehabilitation has not adequately resolved the injury or where the injury is severe, surgical construction may be

5

necessary. Overall, approximately one third of all patients presenting with ACL injuries require reconstruction surgery.

### III. ANALYSIS

As an initial matter, plaintiff contends that the declaration of defendants' expert witness, Ellen O'Brien, M.D., should be stricken because the expert was not disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2) and because the declaration is not consistent with the legal standard for the admission of expert testimony. Parties must disclose the identity of expert witnesses at the times and in the sequence that the court orders and if the court does not so order, the disclosure must be made at least 90 days before trial. Fed. R. Civ. P. 26(a)(2)(D). In this case, I have not yet ordered the disclosure of experts and a trial date is not set. Thus, defendants' failure to disclose the identity of their expert before filing the summary judgment motion does not violate Fed. R. Civ. P. 26.

Plaintiff also contends that Dr. O'Brien's affidavit should be stricken because, in addition to giving her opinion, Dr O'Brien interprets facts for the fact-finder, thereby creating new facts. Plaintiff contends that paragraph ## 10-34, 36-38, and 40-45 of Dr. O'Brien's declaration are misleading for either providing her own interpretation of the facts based on notes she has reviewed in the record, or for creating new facts within the fact patterns that were presented to her in the record. While Dr. O'Brien may not testify as to legal conclusions, she may testify as to ultimate fact issues. <u>Roundy's Inc. v. N.L.R.B.</u>, 674 F.3d 638, 648 (7th Cir. 2012); <u>see</u> <u>also</u> Fed. R. Evid. 704(a). For the most part, Dr. O'Brien's affidavit summarizes plaintiff's medical records. Plaintiff does not challenge her authority to do so. I find that Dr. O'Brien's affidavit accurately restates the medical records and that there is no basis to strike the affidavit. I now turn to plaintiff's constitutional claim.

Defendants contend that plaintiff's claims of deliberate indifference fail as a matter of law. Plaintiff contends that he has shown that prison officials were deliberately indifferent to his serious medical needs and suffering.

"The Eighth Amendment safeguards the prisoner against a lack of medical care that may result in pain and suffering which no one suggests would serve any penological purpose." Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (quoting Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009) (internal quotation omitted)). Prison officials violate the Constitution if they are deliberately indifferent to a prisoner's serious medical need. Id. (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). A prisoner's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012) (quoting Arnett, 658 F.3d at 750).

In this case, defendants do not contend that plaintiff's knee was not a serious medical need and I therefore turn to whether defendants were deliberately indifferent. To demonstrate deliberate indifference, a plaintiff must show that defendants "acted with a sufficiently culpable state of mind," something akin to recklessness. Arnett, 658 F.3d at 751 (quoting Johnson v. Snyder, 444 F.3d 579, 585 (7th Cir. 2006)). A prison official acts with a sufficiently culpable state of mind when he or she knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Id. (citing Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)). Deliberate indifference "is more than negligence and approaches intentional wrongdoing." Id. (quoting Collignon v. Milwaukee Cnty., 163 F.3d 982, 988 (7th Cir. 1998)). It "is not medical malpractice; the Eighth Amendment does not codify common law torts." Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008). "A jury

7

can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." Arnett, 658 F.3d at 751 (quoting Duckworth, 532 F.3d at 679) (quotation marks omitted).

To show that defendants were deliberately indifferent, plaintiff needs to establish that they were aware of but intentionally or recklessly disregarded his serious medical need. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Hayes v. Snyder, 546 F.3d 516, 522-23 (7th Cir. 2008). According to plaintiff, defendants acted with deliberate indifference because the Committee denied his request for knee surgery after his doctor recommended an orthopedic surgery consultation on November 19, 2008. The court defers to a medical professional's treatment decisions "unless 'no minimally competent professional would have so responded under those circumstances.'" Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2008) (quoting Jackson v. Kotter, 541 F.3d 688, 698 (7th Cir. 2008)). Plaintiff points to no evidence which might suggest that defendants' treatment of his knee was unreasonable; plaintiff was seen and treated in the HSU multiple times, and the Committee determined to proceed with a conservative course of treatment for his knee injury. The record shows that defendants' treatment of plaintiff was grounded in professional judgment and was reasonable. See Jackson, 541 F.3d at 698; Johnson v. Doughty, 433 F.3d 1001, 1014 (7th Cir. 2006). Even if defendants were wrong in denying the request for surgery, as long as they believed that they were providing appropriate treatment, they were not deliberately indifferent. See Walker v. Peters, 233 F.3d 494, 499 (7th Cir. 2000).

On the basis of this record, no reasonable juror could find that defendants were deliberately indifferent to plaintiff's serious medical need. See Duckworth, 532 F.3d at 681

8

(concluding that doctor who knew there was risk of cancer but erroneously thought that another condition was more likely causing prisoner's symptoms was not deliberately indifferent); Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006) (explaining that difference of opinion as to prisoner's arthritis amounted to, at most, medical malpractice, and was not constitution violation). A good faith disagreement about the proper course of treatment will never prove deliberate indifference. Norfleet, 439 F.3d at 396; Johnson, 433 F.3d at 1012-13. Therefore, defendants' motion for summary judgment will be granted.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Docket #48) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike (Docket #55) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 22nd day of January, 2013.

            s/ Lynn Adelman
            _____
            LYNN ADELMAN
            District Judge

9

Case 2:10-cv-00337-LA   Filed 01/22/13   Page 9 of 9   Document 59